IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEANGELO C. JOHNSON, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:23-cv-833-HEH
)
EXETER FINANCIAL LLC, *et al.*, )
)
        Defendants. )

**MEMORANDUM OPINION**
(Granting Defendants' Motion to Dismiss in Part
and Granting Plaintiff's Motion to Remand in Part)

THIS MATTER is before the Court on Defendant All Access Services, LLC's and Defendant Exeter Finance LLC's ("Defendants") Motion to Dismiss ("Motion to Dismiss," ECF No. 2) filed pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff Deangelo C. Johnson's ("Plaintiff") Motion to Remand. (ECF No. 5.) Plaintiff, *pro se*, initially filed this lawsuit in the Henrico County General District Court in Virginia, on September 15, 2023. (ECF No. 7 at 13–16, "initial filing".) Plaintiff then filed additional pleadings on November 27, 2023. ("Compl." or "Complaint," ECF No. 7 at 46–62.) Plaintiff raised one claim under the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. § 1692f. Plaintiff also raised five claims under Virginia law.[1] Defendants removed the case to this Court on December 12, 2023.

---

[1] In total, Plaintiff's Complaint alleges that Defendants violated: (1) 15 U.S.C. § 1692f (FDCPA); (2) Va. Code § 6.2-2217(B); (3) Va. Code § 8.9A-609; (4) Article I, § 11 of the Constitution of Virginia; and that Defendants committed (5) Conversion and (6) Trespass to Chattels. (Compl. § VI ¶¶ 81–83; § VII ¶¶ 85–91; § III ¶¶ 61–69; § VII ¶¶ 93–100; § IV ¶¶ 72–74; § V ¶¶ 76–79.)

("Notice of Removal," ECF No. 1.) The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. VA. LOCAL CIV. RULE 7(J). For the reasons that follow, the Court will grant Defendants' Motion to Dismiss as to the § 1692f claim, and grant Plaintiff's Motion to Remand the remaining state law claims.

## I. BACKGROUND[2]

On October 11, 2021, Plaintiff signed a Retail Installment Contract (the "Contract") to purchase a 2017 Ford Taurus (the "Vehicle") from CarMax. (ECF No. 7 at 39–42). The total amount due was $22,900.45. (*Id.*) Plaintiff paid $1,000.00 as a down payment and financed the remaining $21,900.45 through CarMax, which used Exeter Finance LLC ("Exeter") for the financing. (*Id.*) The Contract granted the creditor a security interest over the Vehicle and stated that the Vehicle may be repossessed if the Plaintiff defaulted. (*Id.* at 40.) Between October 11, 2021, and mid-April 2022, Plaintiff made payments to Exeter on the Contract. (ECF No. 3-2 at 2–6.) However, Plaintiff made some payments untimely, and for other payments, Plaintiff submitted coupons rather than electronic or physical check, currency, or an online payment. (*Id.* at 2.) After April 2022, Plaintiff made no further payments. (*Id.*)

On June 28, 2022, eight months after the Contract was signed, Exeter sent Plaintiff a default notice and a notice of the right to cure, and Plaintiff acknowledged receipt. (*Id.*

---

[2] For the purposes of deciding Defendants' 12(b)(6) motion to dismiss, the Court "must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citing *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).

2

at 2, 4–5.) There remained on Plaintiff's account $21,354.66 in unpaid principal, $180.53 in late fees, and $1,673.64 in unpaid interest. (*Id.* at 5.)

Sometime later, Exeter hired a debt collection agency, All Access Services, LLC ("All Access"), to repossess the Ford Taurus. (*See* Compl. § 1 ¶ 6–8; Mot. to Dismiss at 6.) On four (4) occasions between November 1, 2022, and January 7, 2023, All Access unsuccessfully attempted to repossess the Vehicle. (Compl. § I ¶¶ 9–10.) During each attempt, Plaintiff objected to All Access's actions, and although Defendants called law enforcement to facilitate the repossession, All Access left empty-handed. (*Id.*)

According to Plaintiff's initial filing in state court, in April 2022, Plaintiff initiated an arbitration action against Exeter over a contract dispute. (ECF No. 7 at 13.) In that action, Plaintiff claimed that Exeter violated "the Truth in Lending Act, the Fair Credit Reporting Act, securities law, common law breach of contract (and failure of consideration), the Virginia Code prohibition against usury, fraud and conversion." ("Final Award," ECF No. 3-2 at 2–6.)[3] Exeter counterclaimed for breach of contract, an order for the right to repossess the Ford Taurus, and $29,050.00 in attorney's fees. (*Id.* at 3–5.) On March 22, 2023, in the Final Award, the arbitrator found that Plaintiff failed to make payments under the Contract, and denied all of Plaintiff's claims, granting Exeter a total award of $52,258.83—$23,208.83 for the breach of contract claim and $29,050.00

---

[3] The Court reviews the final arbitration award and the Contract that are at the heart of this dispute given that, in Plaintiff's initial filing in state court, he described and referenced this arbitration matter and his contract dispute. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). In addition, those documents are integral to the issues raised in this case. *See id.* Furthermore, Plaintiff does not contest the authenticity of the Contract or the final arbitration award. *See id.*

3

in attorney's fees. (*Id.* at 4–6.) On procedural grounds, the arbitrator denied Exeter's proposed order granting Exeter the right to repossess the Vehicle. (*Id.* at 4.)

On July 27, 2023, over four (4) months after the Final Award, All Access again unsuccessfully tried to repossess the Ford Taurus. (Compl. § II ¶¶ 41–48.) Like the previous four (4) unsuccessful repossession attempts, Plaintiff objected, Defendants called the police, and All Access left without the Vehicle. (*Id.* at ¶¶ 9–48.) However, on August 24, 2023, All Access successfully repossessed the Vehicle. (*Id.* at ¶¶ 49, 55.) On that occasion, Defendants again called police officers to assist with the repossession. (*Id.* at ¶¶ 49–51.) Plaintiff states that the officers "became aggressive, and as discussions became more heated Plaintiff was placed in handcuffs and Defendants were allowed to take possession of the property [the Ford Taurus]." (*Id.* at ¶ 55.) After All Access left with the Vehicle, Plaintiff was released without incident. (*Id.* at ¶ 56.)

The next day, Plaintiff went to All Access's principal place of business to retrieve his wallet, identification card ("ID"), and debit card from inside the Vehicle. (Compl. § II ¶ 57; § VI ¶ 87–89.) All Access informed Plaintiff that he needed to schedule an appointment and they set one for three days later, on August 28, 2023. (Compl. § II ¶ 58; § VI ¶ 87.) Plaintiff alleges that as a result of the delay he was "cut off from access to funds for days, as well as having to arrange transportation without the means to reimburse whoever might be inclined to help." (*Id.* at 90.)

### III. ANALYSIS

To survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests."

4

*Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This notice must contain well-pleaded facts that go beyond "'legal conclusions,' '[t]hreadbare recitals of the elements of a cause of action,' or 'conclusory statements.'" *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

For a Rule 12(b)(6) motion, courts may consider documents that are "explicitly incorporated into the complaint by reference" and "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Id.* (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) (internal quotations omitted) (alteration in original).

When the plaintiff is *pro se*, the Court should "liberally" consider the plaintiff's complaint and hold it to "less stringent standards than formal pleadings drafted by lawyers." *King v. Rubenstein*, 825 F.3d. 206, 214 (4th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). There are limits to how liberally courts may construe *pro se* complaints, and it "does not require those courts to conjure up questions never squarely presented to them" or to ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

5

### A. Plaintiff's 15 U.S.C. § 1692f Claim

The primary basis upon which Defendants removed this case to federal court was Plaintiff's claim under the FDCPA, specifically 15 U.S.C. § 1692f. ("Notice of Removal" at 2–3, ECF No. 1.) Section 1692f prohibits debt collectors from "[using] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff bases his claim on subsection (6)(A), which states that a debt collector violates § 1692f by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." *Id.* § 1692f(6)(A). Here, Plaintiff alleges that Defendants violated this statute by taking the Ford Taurus without holding a possessory right to it. (Compl. § VI ¶ 80-83.)

In his Complaint, Plaintiff acknowledges that Exeter was "a 'Secured Party' under [Virginia Code] § 8.9A-102(a)(73)." (Compl. § I ¶ 4; § V ¶ 80.) This fact is further demonstrated by the Contract which Plaintiff referenced in his initial filing, and upon which Plaintiff bases his right to ownership over the Ford Taurus. (ECF No. 7 at 13, 39–42.) The Contract granted a security interest in the Vehicle to the creditor, and it allowed for repossession of the Vehicle in the event that Plaintiff defaulted. (*Id.* at 39–40.) Given that Plaintiff breached the Contract and was in default, Exeter, as a secured party, had the contractual and statutory right to repossess the Vehicle. (*See id.*; Final Award at 3–6; Va. Code § 8.9A-609.) Therefore, Defendants had a possessory right to the Ford Taurus at the time they repossessed it. Consequently, based on the facts before the Court, Plaintiff has no cognizable claim against Defendants under 15 U.S.C. § 1692f(6)(A).

6

Furthermore, although § 1692f contains a long inventory of other subsections that prohibit particular debt collection practices, those other subsections are completely inapplicable to Plaintiff's claim. *See* 15 U.S.C. § 1692f(1)–(5), (7)–(8). For example, Plaintiff has not even begun to allege any claim under § 1692f's subsections about post-dated checks, charges for communications, post card communications, or use of prohibited language or symbols on communications. *Id.* In fact, when describing his § 1692f claim in his Complaint, Plaintiff stated that the issue was one under subsection (6)(A), and he did not state any particular facts that violated the other subsections or § 1692f in general. (Compl. ¶¶ 81–82.)

For all these reasons, Plaintiff has failed to plead a cognizable claim under § 1692f. Based on the facts before the Court, Defendants had a "present right to possession of the property claimed as collateral through an enforceable security interest" in accordance with 15 U.S.C. § 1692f(6)(A). Consequently, the Court will dismiss Plaintiff's § 1692f claim without prejudice.

### B. Plaintiff's State Law Claims

In their Notice of Removal, Defendants stated that the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims share a common nucleus of operative facts with Plaintiff's federal claim. (Notice of Remand ¶¶ 8–9.) Conversely, Plaintiff moves this Court to remand his case back to state court. (ECF No. 5.)

Under 28 U.S.C. § 1367(c), a district court may decline to exercise its supplemental jurisdiction if:

7

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Root v. Cnty. of Fairfax*, 371 F. App'x 432, 435 (4th Cir. 2010) (quoting 28 U.S.C. § 1367(c)).

"A court has 'wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.'" *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). Both the United States Court of Appeals for the Fourth Circuit and the Supreme Court of the United States strongly favor dismissing state law claims if the federal claims are dismissed before trial. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.") (First citing *Gibbs*, 383 U.S. at 726; and then citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Indeed, "when all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction—'considerations of judicial economy, convenience and fairness to litigants'—are typically absent." *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*,

11 F. App'x 283, 287 (4th Cir. 2001) (quoting *Gibbs*, 383 U.S. at 726). In such circumstances, if the case had originally been removed, then the state law claims can be remanded to state court. *See Waybright v. Frederick Cnty.*, 528 F.3d 199, 209–10 (4th Cir. 2008).

Here, not only has Plaintiff's sole federal claim been extinguished, but Plaintiff has also raised a question that is apparently a novel issue of state law. Virginia Code § 6.2-2217(B) requires that "[b]orrowers shall be permitted to recover personal items from repossessed motor vehicles promptly and at no cost." Plaintiff contends that Defendants violated this statute by failing to "promptly" return his personal items that were left in the Ford Taurus when it was repossessed. Specifically, Plaintiff alleges that for three (3) days Defendants denied him the recovery of his wallet, his ID, and his debit card. (Compl. § VI ¶¶ 87–90.)

Virginia Code § 6.2-2000 provides a list of definitions, but it does not define the meaning of "promptly." Furthermore, neither Plaintiff nor Defendants cite to caselaw where courts have evaluated the meaning of the word "promptly" in § 6.2-2217(B), and the Court is likewise not aware of any. Although the Eastern District has previously resolved a case in which a Plaintiff sought to recover personal property from within a repossessed vehicle, the Court did not reach the issue of promptness because the plaintiff failed to prove that the items in question were actually in the vehicle. *Mahdavi v. NextGear Capital, Inc.*, No. 1:14CV648, 2015 U.S. Dist. LEXIS 44356, at *9–10 (E.D. Va. Apr. 3, 2015). Under these circumstances, whether three days constitutes a prompt return of Plaintiff's wallet, ID, and debit card is a novel question of state law.

9

On balance then, given that the federal question will be dismissed and given the novel question of state law, there is no good reason to keep this case in federal court. *See Waybright*, 528 F.3d at 209. "Indeed, our precedents evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction under circumstances such as those reflected here."[4] *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010). Consequently, the Court will grant Plaintiff's Motion to Remand, thereby allowing Plaintiff to have the entirety of his remaining claims heard in state court. *See Waybright,* 528 F.3d at 209.

### III. CONCLUSION

In sum, given that Plaintiff has no legally cognizable claim under 15 U.S.C. § 1692f based on the facts before the Court, the Court will dismiss that claim without prejudice. In addition, given that the federal question will be dismissed, and given the novel question of state law in this case, the Court will remand the remaining counts in this matter to the Henrico County General District Court.

An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
Senior United States District Judge

Date: Sept. 27, 2024
Richmond, Virginia

---

[4] Given the Court's conclusion that the matter should be remanded to state court, the Court does not reach the question of whether Plaintiff's state law claims should be dismissed for failure to state a claim.